## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| James T. Buechler, and all others similarly situated, | Case No. |
|     Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| MedQuest Pharmacy, Inc., a Utah Corporation, | |
| Innovations Group, Inc., a Delaware Corporation, | **JURY TRIAL DEMANDED** |
| and | |
| UpHealth, Inc., a Delaware Corporation, | |
|     Defendants. | |

Plaintiff James T. Buechler ("Plaintiff"), individually and on behalf of all other similarly situated individuals, and by and through his undersigned counsel files this Class Action Complaint against MedQuest Pharmacy, Inc. ("MedQuest"), Innovations Group, Inc. ("IGI"), a subsidiary of UpHealth, Inc. ("UpHealth"), and UpHealth (collectively, "Defendants"), and alleges the following based upon personal knowledge of facts and upon information and belief based upon the investigation of counsel as to all other matters.

### NATURE OF THE ACTION

1.    With this action, Plaintiff seeks to hold Defendants responsible for the harms they caused Plaintiff and the nearly 40,000 similarly situated persons in the massive and preventable data breach that took place between October 27, 2021, and October 30, 2021, by

which cybercriminals gained access to Defendants' inadequately protected systems where sensitive personal information was kept unprotected (the "Data Breach" or "Breach").[1]

2.      The cybercriminals gained access to Defendants' system with the apparent intention of stealing protected personal information and protected health information of thousands of individuals whose information was stored on Defendants' computer systems.

3.      UpHealth is a digital health technology platform that partners with providers, hospitals, health systems, healthcare facilities, and payors to manage care for customers.[2] UpHealth is a publicly traded company registered with the U.S. Security and Exchange Commission.

4.      MedQuest and IGI are subsidiary companies of UpHealth. MedQuest retails prescription and non-prescription medicines. MedQuest serves customers in the State of Utah and is licensed to dispense to patients in all 50 states.[3]

5.      MedQuest collaborates with its partners and affiliates to develop a "customized approach to medication…known as personalized healthcare" to customize medications to the needs of individual patients.[4]

6.      Plaintiff and Class members are required, as patients of Defendants and their affiliate partners, to provide Defendants with their "Personal and Medical Information" (defined below), with the assurance that such information will be kept safe from unauthorized access. By taking possession and control of Plaintiff's and Class members' Personal and

---

[1] *See* https://www.hipaajournal.com/memorial-health-system-confirms-216k-patients-affected-by-august-2021-ransomware-attack/#:~:text=MedQuest%20Pharmacy%20Data%20Breach%20Affects,detected%20on%20November%2018%2C%202021.
[2] *See* https://www.crunchbase.com/organization/uphealth-22eb
[3] *See* https://medquest.com/
[4] *See* https://medquest.com/

Medical Information, Defendants assume a duty to securely store the Personal and Medical Information of Plaintiff and the Class.

7.    Defendants breached this duty and betrayed the trust of Plaintiff and Class members by failing to properly safeguard and protect their Personal and Medical Information, thus enabling cybercriminals to compromise their systems and steal this sensitive information.

8.    The compromised Personal and Medical Information at issue includes (i) patient contact information (such as patient name, guarantor name, address, email address, gender, and date of birth); (2) Social Security number, driver's license number, state identification number, and/or financial account information; (3) health insurance information (payor name, payor contract dates, policy information including type and deductible amount and subscriber/Medicare/Medicaid number); (4) medical and/or treatment information (dates of service, location, services requested or procedures performed, medical record numbers, diagnosis, prescription information, physician names, referring doctor names, and Medical Record Numbers); and (5) billing and claims information (invoices, submitted claims and appeals, and patient account identifiers used by the patient's provider).[5] Specifically, Plaintiff's

9.    Defendants' misconduct – failing to timely implement adequate and reasonable measures to protect Plaintiff's Personal and Medical Information, failing to timely detect the Data Breach, failing to take adequate steps to prevent and stop the Data Breach, failing to disclose the material facts that they did not have adequate security practices in place to safeguard the Personal and Medical Information, failing to honor their promises and representations to protect Plaintiff's and Class members' Personal and Medical Information,

---

[5] *See* https://www.hipaajournal.com/memorial-health-system-confirms-216k-patients-affected-by-august-2021-ransomware-attack/#:~:text=MedQuest%20Pharmacy%20Data%20Breach%20Affects,detected%20on%20November%2018%2C%202021.

3

and failing to provide timely and adequate notice of the Data Breach – caused substantial harm and injuries to Plaintiff and Class members across the United States.

10. Due to Defendants' negligence and failures, cybercriminals obtained and now possess everything they need to commit personal and medical identity theft and wreak havoc on the financial and personal lives of nearly 40,000 individuals for decades to come.

11. As a result of the Data Breach, Plaintiff and Class members have already suffered damages. For example, now that their Personal and Medical Information has been released into the criminal cyber domains, Plaintiff and Class members are at imminent and impending risk of identity theft. This risk will continue for the rest of their lives, as Plaintiff and Class members are now forced to deal with the danger of identity thieves possessing and using their Personal and Medical Information. Additionally, Plaintiff and Class members have already lost time and money responding to and mitigating the impact of the Data Breach.

12. Plaintiff brings this action individually and on behalf of the Class and seeks actual damages, statutory damages, punitive damages, restitution, and injunctive and declaratory relief (including significant improvements to Defendants' data security systems and protocols), reasonable attorney fees, costs, and expenses incurred in bringing this action, and all other remedies this Court deems proper.

### THE PARTIES

**Plaintiff James T. Buechler**

13. Plaintiff James T. Buechler is a citizen and resident of Maryland.

14. Plaintiff is a patient of MedQuest.

15. Plaintiff received a letter from MedQuest dated December 23, 2021, informing him that his first and last name, date of birth, mailing address, email address, telephone number,

4

gender, Social Security number, driver's license number, medical record number, health information (including prescription information), referring doctor, date(s) of treatment, health insurance policy information or policy number (including Medicare number, if applicable), health insurance claim number or claim or appeal information, internal MedQuest identification number, financial account or payment card information (including expiration date, access code, and CVV), and account login credentials were or could have been compromised in the Data Breach. *See* **Exhibit 1**, the "Notice."

16.    Plaintiff was required to provide Defendants with highly sensitive personal, health, and insurance information, including his Personal and Medical Information compromised in the Data Breach. Plaintiff believes this is a standard practice required of all Defendants' patients.

17.    Because of Defendants' negligence leading to the Data Breach, Plaintiff's Personal and Medical Information is now in the hands of cyber criminals and Plaintiff is now under imminent risk of identity theft and fraud, including medical identity theft and medical fraud.

18.    The imminent risk of medical identity theft and fraud that Plaintiff now faces is substantial, certainly impending, and continuous and ongoing because of the negligence of Defendants, which negligence led to the Data Breach. Plaintiff has already been forced to spend time and money responding to the Data Breach in an attempt to mitigate the harms of the Breach and determine how best to protect himself from identity theft and medical information fraud. These efforts are continuous and ongoing.

4894-5345-1823.v1

19.     As a direct and proximate result of the Data Breach, Plaintiff received multiple emails and letters from his bank and credit card companies alerting him to possible fraud and fraud attempts on his accounts.

20.     As a direct and proximate result of the Data Breach, Plaintiff had to obtain a new Bank of America card because Bank of America informed Plaintiff his card had been compromised. His current card was deactivated while he waited on his new card to arrive, depriving him of use of that account.

21.     As a direct and proximate result of the Data Breach, an unknown external device attempted to access his Bookings.com account, and Bookings.com locked in his account until he reset his password.

22.     As a direct and proximate result of the Data Breach, someone attempted to access Plaintiff's USAA account a number of times which resulted in USAA locking his online banking profile. USAA then gave him a mere twenty-four (24) hours to verify his online banking profile online in order to continue using it.

23.     All of these attempts were committed after the date of the Data Breach.

24.     Plaintiff has had to spent at least five (5) hours responding to the Data Breach.

25.     As a direct and proximate result of the Data Breach, Plaintiff has had to use a subscription identity theft protection and credit monitoring service in order to protect himself from medical identity theft and other types of fraud of which he is now substantially at risk. This subscription will need to be renewed yearly for the rest of his lifetime.

26.     Plaintiff Buechler has also suffered injury directly and proximately caused by the Data Breach, including damages and diminution in value of his Personal and Medical Information that was entrusted to Defendants for the sole purpose of obtaining medical services

4894-5345-1823.v1

necessary for his health and well-being, with the understanding that Defendants would safeguard this information against disclosure. Additionally, Plaintiff's Personal and Medical Information is at continued risk of compromise and unauthorized disclosure as it remains in the possession of Defendants and is subject to further breaches so long as Defendants fails to undertake appropriate and adequate measures to protect it.

27.    Plaintiff Buechler has never been a victim of any type of identity theft. To Plaintiff's knowledge, the Personal and Medical Information compromised in this Data Breach has not been compromised in any prior data breach.

**Defendants MedQuest, IGI, and UpHealth**

28.    Defendants MedQuest and IGI are both headquartered in North Salt Lake, Utah. Defendant MedQuest is incorporated in the State of Delaware.[6] Defendant IGI is incorporated in the State of Utah.[7] Defendant UpHealth is incorporated in the State of Delaware and headquartered in Delray, Florida.[8]

29.    Founded in 1996, Defendant IGI is a healthcare organization that partners with providers, hospitals, health systems and healthcare facilities to offer clinical services spanning care, contract manufacturing of nutritional supplements and medications, patient engagement, education and training solutions.[9]

30.    MedQuest's website contains a "HIPAA Privacy Policy," in which it assures its patients it is "committed to compliance with all federal and state laws that pertain to any aspect

---

[6] *See* https://secure.utah.gov/bes/displayDetails.html
[7] *See* https://secure.utah.gov/bes/displayDetails.html
[8] *See* https://search.sunbiz.org/Inquiry/CorporationSearch/GetDocument?aggregateId=forp-f21000005884-3d8de819-c96a-4ba4-842b-6474f7eb6968&transactionId=f21000005884-ac00faed-c332-4fa7-9210-1b383f0eac2f&formatType=PDF
[9] *See* https://www.linkedin.com/company/innovations-group-inc-igi-/about/

4894-5345-1823.v1

of the clinical practices or the business procedures of this pharmacy," and that its privacy procedures are "in complete compliance with [HIPAA]."[10]

## JURISDICTION AND VENUE

31.     This Court has diversity jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and Plaintiff and members of the Class are citizens of states that differ from Defendants.

32.     This Court has personal jurisdiction over Defendants because Defendants MedQuest and IGI maintain their headquarters in Utah and have sufficient minimum contacts with Utah. Also, upon information and belief, the Data Breach at issue occurred through email accounts being used by Defendants' employees physically located in North Salt Lake, Utah.

33.     Venue is likewise proper as to Defendants in this District under 28 U.S.C. § 1391(a)(1) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District. Defendants are based in this District, conduct business through this District (including promoting, selling, marketing, and distributing the MedQuest and IGI brands and services at issue), and maintained Plaintiff's and Class members' Personal and Medical Information in this District.

## FACTUAL ALLEGATIONS

**A.  The Data Breach and Defendants' Failed Response**

34.     On or about October 30, 2021, Defendants discovered that unauthorized third-party hackers gained access to certain computer systems.

---

[10] *See* https://medquest.com/hipaa-privacy-policy/.

35.    It is apparent from the Notice sent to Plaintiff and the Class that the Personal and Medical Information contained within these systems was not encrypted.

36.    Following the unauthorized access, Defendants blocked access to its environment on October 30, 2021. Defendant then began working with a forensic firm to investigate the Breach. Based upon the investigation, the hackers were able to access Plaintiff's and Class members' Personal and Medical Information, unencrypted and unprotected.

37.    Upon information and belief, the unauthorized third-party gained access to the Personal and Medical Information and has engaged in (and will continue to engage in) misuse of the Personal and Medical Information, including marketing and selling Plaintiff's and Class members' Personal and Medical Information on the dark web.

38.    Despite knowing that thousands of patients across the nation were in danger as a result of the Data Breach, Defendants did nothing to warn Plaintiff or Class members until nearly a month after learning of the Data Breach.

39.    In spite of the severity of the Data Breach, Defendants have done very little to protect Plaintiff and the Class. In the Notice, Defendants encourage victims "remain vigilant by checking [their] credit reports periodically." The Notice also includes a complimentary one-year membership to a credit monitoring service.

40.    In effect, Defendants are shirking their responsibility for the harm and increased risk of harm they have caused Plaintiff and members of the Class, including the distress and financial burdens the Data Breach has placed upon the shoulders of the Data Breach victims, and risk that will long outlast the one-year subscription offered to a credit monitoring service.

41.    Defendants failed to adequately safeguard Plaintiff's and Class members' Personal and Medical Information, allowing cyber criminals to access this wealth of priceless

9

information for three (3) days before securing the network and then waiting nearly a month before warning the criminals' victims to be on the lookout.

42.     Defendants failed to spend sufficient resources on monitoring and safeguarding its computer systems from hacking threats and defend against them.

43.     Defendants had obligations created by the Health Insurance Portability and Accountability Act ("HIPAA"), reasonable industry standards, common law, state statutory law, and their assurances and representations to their patients to keep patients' Personal and Medical Information confidential and to protect such Personal and Medical Information from unauthorized access.

44.     Plaintiff and Class members were required to provide their Personal and Medical Information to Defendants with the reasonable expectation and mutual understanding that they would comply with their obligations to keep such information confidential and secure from unauthorized access.

45.     The stolen Personal and Medical Information at issue has great value to the hackers, due to the large number of individuals affected and the fact that health insurance information and Social Security numbers were part of the data that was compromised.

**B.  Defendants had an Obligation to Protect Personal and Medical Information under Federal Law and the Applicable Standard of Care**

46.     Defendants are covered by HIPAA (45 C.F.R. § 160.102). As such, they are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

4894-5345-1823.v1

47.     HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

48.     HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

49.     HIPAA requires Defendants to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

50.     "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

51.     HIPAA's Security Rule requires Defendants to do the following:

    a.     Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

    b.     Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

    c.     Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

    d.     Ensure compliance by their workforce.

52.     HIPAA also requires Defendants to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

4894-5345-1823.v1

53.     HIPAA also requires Defendants to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

54.     Defendants were also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

55.     In addition to their obligations under federal and state laws, Defendants owed a duty to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Personal and Medical Information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiff and Class members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems, networks, and protocols adequately protected the Personal and Medical Information of the Class.

56.     Defendants owed a duty to Plaintiff and the Class to design, maintain, and test their computer and email systems to ensure that the Personal and Medical Information in Defendants' possession was adequately secured and protected.

57.     Defendants owed a duty to Plaintiff and the Class to create and implement reasonable data security practices and procedures to protect the Personal and Medical

12

Information in their possession, including adequately training their employees and others who accessed Personal and Medical Information within their computer systems on how to adequately protect Personal and Medical Information.

58.    Defendants owed a duty to Plaintiff and the Class to implement processes that would detect a breach on their data security systems in a timely manner.

59.    Defendants owed a duty to Plaintiff and the Class to act upon data security warnings and alerts in a timely fashion.

60.    Defendants owed a duty to Plaintiff and the Class to adequately train and supervise their employees to identify and avoid any phishing emails that make it past their email filtering service.

61.    Defendants owed a duty to Plaintiff and the Class to disclose if their computer systems and data security practices were inadequate to safeguard individuals' Personal and Medical Information from theft because such an inadequacy would be a material fact in the decision to entrust Personal and Medical Information with Defendants.

62.    Defendants owed a duty to Plaintiff and the Class to disclose in a timely and accurate manner when data breaches occurred.

63.    Defendants owed a duty of care to Plaintiff and the Class because they were foreseeable and probable victims of any inadequate data security practices.

## C. Defendants were on Notice of Cyber Attack Threats in the Healthcare Industry and of the Inadequacy of their Data Security

64.    Defendants were on notice that companies in the healthcare industry were targets for cyberattacks.

65.    Defendants were on notice that the FBI has recently been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health

Systems, Inc., the FBI warned companies within the healthcare industry that hackers were

targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting

healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare

Information (PHI) and/or Personally Identifiable Information (PII)."[11]

66.    The American Medical Association ("AMA") has also warned healthcare

companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA
> research has revealed that 83% of physicians work in a practice that has
> experienced some kind of cyberattack. Unfortunately, practices are learning
> that cyberattacks not only threaten the privacy and security of patients'
> health and financial information, but also patient access to care.[12]

67.    As implied by the above quote from the AMA, stolen Personal and Medical

Information can be used to interrupt important medical services themselves. This is an

imminent and certainly impending risk for Plaintiff and Class members.

68.    Defendants were on notice that the federal government has been concerned

about healthcare company data encryption.

69.    The United States Department of Health and Human Services' Office for Civil

Rights urges the use of encryption of data containing sensitive personal information. As long

ago as 2014, the Department fined two healthcare companies approximately two million

dollars for failing to encrypt laptops containing sensitive personal information. In announcing

the fines, Susan McAndrew, the DHHS's Office of Human Rights' deputy director of health

---

[11] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, REUTERS (Aug. 2014), http://www.reuters.com/article/2014/08/20/us-cybersecurity-healthcare-fbi-idUSKBN0GK24U20140820.

[12] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, AM. MED. ASS'N (Oct. 4, 2019), https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomeware-attacks-shut-down-clinics-hospitals.

information privacy, stated "[o]ur message to these organizations is simple: encryption is your best defense against these incidents."[13]

70.     One of the best protections against hacking related threats is security awareness training and testing on a regular basis. This should be a key part of a company's ongoing training of its employees.

### D. Cybercriminals Will Use Plaintiff's and Class Members' Personal and Medical Information to Defraud Them

71.     Plaintiff and Class members' Personal and Medical Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and the Class members and to profit off their misfortune.

72.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[14] For example, with the Personal and Medical Information stolen in the Data Breach, including Social Security numbers, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[15] These criminal activities have and will result in devastating financial and personal losses to Plaintiff and the Class members.

---

[13]"Stolen Laptops Lead to Important HIPAA Settlements," U.S. Dep't of Health and Human Services (Apr. 22, 2014), available at https://wayback.archive-it.org/3926/20170127085330/https://www.hhs.gov/about/news/2014/04/22/stolen-laptops-lead-to-important-hipaa-settlements.html.

[14]"Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

[15]*See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

73.    Personal and Medical Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on the cyber black-market for years.[16]

74.    For example, it is believed that certain Personal and Medical Information compromised in the 2017 Experian data breach was being used, three years later, by identity thieves to apply for COVID-19-related unemployment benefits in the state of Oklahoma.[17]

75.    The Personal and Medical Information exposed in this Data Breach are valuable to identity thieves for use in the kinds of criminal activity described herein.

76.    These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to personally identifiable information, they will use it.[18]

77.    Hackers may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[19]

78.    For instance, with a stolen Social Security number, which is part of the Personal and Medical Information compromised in the Data Breach, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[20] Identity thieves can also use the information stolen from Plaintiff and Class members to qualify

---

[16] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu

[17] *See* https://www.engadget.com/stolen-data-used-for-unemployment-fraud-ring-174618050.html; *see also* https://www.wired.com/story/nigerian-scammers-unemployment-system-scattered-canary/

[18] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[19] *Data Breaches Are Frequent, supra* note 11.

[20] *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

for expensive medical care and leave them and their contracted health insurers on the hook for massive medical bills.

79.     Medical identity theft is one of the most common, most expensive, and most difficult to prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more than identity thefts involving banking and finance, the government and the military, or education.[21]

80.     "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[22]

81.     As indicated by Jim Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where [personal health information] can go from $20 say up to—we've seen $60 or $70 [(referring to prices on dark web marketplaces)]."[23] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[24]

---

[21] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.
[22] *Id.*
[23] IDExperts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, https://www.idexpertscorp.com/knowedge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat.
[24] *Managing cyber risks in an interconnected world*, PRICEWATERHOUSECOOPERS: Key findings from The Global State of Information Security Survey 2015, https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf.

4894-5345-1823.v1

82.    If cybercriminals manage to steal financial information, health insurance information, and driver's licenses—as they did here—there is no limit to the amount of fraud to which Defendants have exposed the Plaintiff and Class members.

83.    A study by Experian found that the average total cost of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[25]  Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve their identity theft at all.[26]

84.    As described above, identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[27]

85.    Defendants' offer of one year of identity theft monitoring is woefully inadequate, as the worst is yet to come.

86.    With this Data Breach, it is likely identity thieves have already started to prey on the victims, and we can anticipate that this will continue.

87.    Victims of the Data Breach, like Plaintiff and other Class members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their credit because of the Data Breach.[28]

---

[25] *See* Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.

[26] *Id.*; *see also Healthcare Data Breach: What to Know About them and What to Do After One*, EXPERIAN, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/.

[27] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

[28] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

4894-5345-1823.v1

88.    In fact, as a direct and proximate result of the Data Breach, Plaintiff and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.  Plaintiff and the Class must now take the time and effort and spend the money to mitigate the actual and potential impact of the Data Breach on their everyday lives, including purchasing identity theft and credit monitoring services, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

89.    Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

    a.    Trespass, damage to, and theft of their personal property including Personal and Medical Information;

    b.    Improper disclosure of their Personal and Medical Information;

    c.    The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal and Medical Information being placed in the hands of criminals and having been already misused;

    d.    The imminent and certainly impending risk of having their confidential medical information used against them by spam callers to defraud them;

    e.    Damages flowing from Defendants untimely and inadequate notification of the data breach;

    f.    Loss of privacy suffered as a result of the Data Breach;

g.    Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

h.    Ascertainable losses in the form of deprivation of the value of patients' personal information for which there is a well-established and quantifiable national and international market;

i.    The loss of use of and access to their credit, accounts, and/or funds;

j.    Damage to their credit due to fraudulent use of their Personal and Medical Information; and

k.    Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

90.    Moreover, Plaintiff and Class members have an interest in ensuring that their information, which remains in the possession of Defendants, is protected from further breaches by the implementation of industry standard and statutorily compliant security measures and safeguards. Defendants have shown themselves to be wholly incapable of protecting Plaintiff's and Class members' Personal and Medical Information.

91.    Plaintiff and Class members are desperately trying to mitigate the damage that Defendants have caused them but, given the kind of Personal and Medical Information Defendants made accessible to hackers, they are certain to incur additional damages. Because identity thieves have their Personal and Medical Information, Plaintiff and all Class members will need to have identity theft monitoring protection for the rest of their lives. Some may even

need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with this change.[29]

92.    None of this should have happened. The Data Breach was preventable.

### E.    Defendants Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiff's and Class Members' Personal and Medical Information

93.    Data breaches are preventable.[30] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[31] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[32]

94.    "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[33]

95.    Defendants required Plaintiff and Class members to surrender their Personal and Medical Information – including but not limited to their names, addresses, Social Security numbers, medical information, and health insurance information – and were entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of such Personal and Medical Information.

---

[29]*Will a New Social Security Number Affect Your Credit?*, LEXINGTON LAW (Nov. 16, 2015), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.
[30]Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012)
[31]*Id.* at 17.
[32]*Id.* at 28.
[33]*Id.*

96.     Defendants breached fiduciary duties owed to Plaintiff and the Class guardians of Plaintiff's and Class members' Personal and Medical Information.

97.     Many failures laid the groundwork for the success ("success" from a cybercriminal's viewpoint) of the Data Breach, starting with Defendants' failure to incur the costs necessary to implement adequate and reasonable cyber security procedures and protocols necessary to protect Plaintiff's and Class members' Personal and Medical Information.

98.     Defendants maintained the Personal and Medical Information in a reckless manner.

99.     Defendants knew, or reasonably should have known, of the importance of safeguarding Personal and Medical Information and of the foreseeable consequences that would occur if Plaintiff's and Class members' Personal and Medical Information was stolen, including the significant costs that would be placed on Plaintiff and Class members as a result of a breach.

100.     The mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class members' Personal and Medical Information was a known risk to Defendants, and thus Defendants were on notice that failing to take necessary steps to secure Plaintiff's and Class members' Personal and Medical Information from those risks left that information in a dangerous condition.

101.     Defendants disregarded the rights of Plaintiff and Class members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that their business email accounts were protected against unauthorized intrusions; (ii) failing to disclose that they did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class members' Personal

and Medical Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class members prompt and accurate notice of the Data Breach.

## CLASS ACTION ALLEGATIONS

102.    Plaintiff brings this action against Defendants and all other individuals similarly situated under Federal Rule of Civil Procedure 23. Plaintiff asserts all claims on behalf of the Class and Subclass defined as follows:

### Nationwide Class

**All persons residing in the United States whose personal and medical information was compromised as a result of the MedQuest Data Breach that occurred in October 2021.**

### Maryland Subclass

**All persons residing in Maryland whose personal and medical information was compromised as a result of the MedQuest Data Breach that occurred in October 2021.**

Excluded from the Nationwide Class and Subclass are Defendants, any entity in which Defendants has a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff.

103.    Plaintiff reserves the right to amend the above definitions or to propose alternative or additional subclasses in subsequent pleadings and motions for class certification.

4894-5345-1823.v1

### a.  Class Certification is Appropriate

104.    The proposed Class and Subclass meet the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

105.    **Numerosity:** The proposed Class is believed to be so numerous that joinder of all members is impracticable. The proposed Subclass is also believed to be so numerous that joinder of all members would be impractical.

106.    **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Defendants' uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class had their sensitive Personal and Medical Information compromised in the same way by the same conduct of Defendants.

107.    **Adequacy:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class and proposed Subclass that he seeks to represent; Plaintiff has retained counsel competent and highly experienced in data breach class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

108.    **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class members could afford such individual litigation, the court system

could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

109.    **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a.      Whether Defendants engaged in the wrongful conduct alleged herein;

b.      Whether Defendants failed to adequately safeguard Plaintiff's and the Class's Personal and Medical Information;

c.      Whether Defendants' email and computer systems and data security practices used to protect Plaintiff's and Class members' Personal and Medical Information violated the FTC Act and/or HIPAA, and/or state laws and/or Defendants' other duties discussed herein;

d.      Whether Defendants owed a duty to Plaintiff and the Class to adequately protect their Personal and Medical Information, and whether they breached this duty;

e.      Whether Defendants knew or should have known that their computer and network security systems and business email accounts were vulnerable to a data breach;

f.     Whether Defendants' conduct, including their failure to act, resulted in or was the proximate cause of the Data Breach;

g.     Whether Defendants breached contractual duties to Plaintiff and the Class to use reasonable care in protecting their Personal and Medical Information;

h.     Whether Defendants failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

i.     Whether Defendants continue to breach duties to Plaintiff and the Class;

j.     Whether Plaintiff and the Class suffered injury as a proximate result of Defendants' negligent actions or failures to act;

k.     Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief;

l.     Whether injunctive relief is appropriate and, if so, what injunctive relief is necessary to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class;

m.     Whether Defendants' actions alleged herein constitute gross negligence; and

n.     Whether Plaintiff and Class members are entitled to punitive damages.

26

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
**(On Behalf of Plaintiff and the Class or, alternatively, Plaintiff and the Maryland Subclass)**

110.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

111.    Defendants gathered and stored the Personal and Medical Information of Plaintiff and the Class as part of the operation of their business.

112.    Upon accepting and storing the Personal and Medical Information of Plaintiff and Class members, Defendants undertook and owed a duty to Plaintiff and Class members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so.

113.    Defendants had full knowledge of the sensitivity of the Personal and Medical Information, the types of harm that Plaintiff and Class members could and would suffer if the Personal and Medical Information was wrongfully disclosed, and the importance of adequate security.

114.    Plaintiff and Class members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class members had no ability to protect their Personal and Medical Information that was in Defendants' possession. As such, a special relationship existed between Defendants and Plaintiff and the Class.

115.    Defendants were well aware of the fact that cyber criminals routinely target large corporations through cyberattacks in an attempt to steal Personal and Medical Information.

116.    Defendants owed Plaintiff and the Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard such data and providing notification to Plaintiff and the Class members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

117.    Defendants' duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures also have recognized the existence of a specific duty to reasonably safeguard personal information.

118.    Defendants had duties to protect and safeguard the Personal and Medical Information of Plaintiff and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Personal and Medical Information. Additional duties that Defendants owed Plaintiff and the Class include:

a.    To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendants' networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff's and Class members' Personal and Medical Information was adequately secured from impermissible release, disclosure, and publication;

b.    To protect Plaintiff's and Class members' Personal and Medical Information in their possession by using reasonable and adequate security procedures and systems;

28

    c.    To implement processes to quickly detect a data breach, security incident, or intrusion involving their business email system, networks and servers; and

    d.    To promptly notify Plaintiff and Class members of any data breach, security incident, or intrusion that affected or may have affected their Personal and Medical Information.

119.   Only Defendants were in a position to ensure that their systems and protocols were sufficient to protect the Personal and Medical Information that Plaintiff and the Class had entrusted to them.

120.   Defendants breached their duties of care by failing to adequately protect Plaintiff's and Class members' Personal and Medical Information. Defendants breached their duties by, among other things:

    a.    Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting, and protecting the Personal and Medical Information in their possession;

    b.    Failing to protect the Personal and Medical Information in their possession using reasonable and adequate security procedures and systems;

    c.    Failing to adequately and properly audit, test, and train their employees to avoid phishing emails;

    d.    Failing to use adequate email security systems, including healthcare industry standard SPAM filters, DMARC enforcement, and/or Sender Policy Framework enforcement to protect against phishing emails;

4894-5345-1823.v1

e.  Failing to adequately and properly audit, test, and train their employees regarding how to properly and securely transmit and store Personal and Medical Information;

f.  Failing to adequately train their employees to not store Personal and Medical Information in their email inboxes longer than absolutely necessary for the specific purpose that it was sent or received;

g.  Failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class's Personal and Medical Information;

h.  Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

i.  Failing to promptly notify Plaintiff and Class members of the Data Breach that affected their Personal and Medical Information.

121.   Defendants' willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

122.   As a proximate and foreseeable result of Defendants' grossly negligent conduct, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

123.   Through Defendants' acts and omissions described herein, including but not limited to Defendants' failure to protect the Personal and Medical Information of Plaintiff and Class members from being stolen and misused, Defendants unlawfully breached their duty to use reasonable care to adequately protect and secure the Personal and Medical Information of Plaintiff and Class members while it was within Defendants' possession and control.

124. Further, through their failure to provide timely and clear notification of the Data Breach to Plaintiff and Class members, Defendants prevented Plaintiff and Class members from taking meaningful, proactive steps to securing their Personal and Medical Information and mitigating damages.

125. As a result of the Data Breach, Plaintiff and Class members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, paying for credit monitoring and identity theft prevention services, and closely reviewing and monitoring bank accounts, credit reports, and statements sent from providers and their insurance companies.

126. Defendants' wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence.

127. The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendants' grossly negligent conduct.

128. Plaintiff and the Class have suffered injury and are entitled to actual and punitive damages in amounts to be proven at trial.

**SECOND CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class or, alternatively, Plaintiff and the Maryland Subclass)**

129. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

130. Plaintiff and the Class bring this claim in the alternative to all other claims and remedies at law.

131. Plaintiff and Class members conferred a monetary benefit upon Defendants in the form of monetary payments to obtain medical services from Defendants.

4894-5345-1823.v1

132.    Defendants collected, maintained, and stored the Personal and Medical Information of Plaintiff and Class members and, as such, Defendants had direct knowledge of the monetary benefits conferred upon them by Plaintiff and Class members.

133.    Defendants, by way of their affirmative actions and omissions, including their knowing violations of their express or implied contracts with Plaintiff and the Class members, knowingly and deliberately enriched themselves by saving the costs they reasonably and contractually should have expended on HIPAA compliance and reasonable data privacy and security measures to secure Plaintiff's and Class members' Personal and Medical Information.

134.    Instead of providing a reasonable level of security, training, and protocols that would have prevented the Data Breach, as described above and as is common industry practice among companies entrusted with similar Personal and Medical Information, Defendants, upon information and belief, instead consciously and opportunistically calculated to increase their own profits at the expense of Plaintiff and Class members.

135.    As a direct and proximate result of Defendants' decision to profit rather than provide adequate data security, Plaintiff and Class members suffered and continue to suffer actual damages in (i) the amount of the savings and costs Defendants reasonably and contractually should have expended on data security measures to secure Plaintiff's Personal and Medical Information, (ii) time and expenses mitigating harms, (iii) diminished value of Personal and Medical Information, (iv) loss of privacy, and (v) an increased risk of future identity theft.

136.    Defendants, upon information and belief, have therefore engaged in opportunistic, unethical, and immoral conduct by profiting from conduct that they knew would create a significant and highly likely risk of substantial and certainly impending harm to

Plaintiff and the Class in direct violation of Plaintiff' and Class members' legally protected interests. As such, it would be inequitable, unconscionable, and unlawful to permit Defendants to retain the benefits they derived as a consequence of their breach.

137.    Accordingly, Plaintiff and the Class are entitled to relief in the form of restitution and disgorgement of all ill-gotten gains, which should be put into a common fund to be distributed to Plaintiff and the Class.

**THIRD CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class or, alternatively, Plaintiff and the Maryland Subclass)**

138.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

139.    When Plaintiff and the Class members provided their Personal and Medical Information to Defendants when seeking medical services, they entered into implied contracts in which Defendants agreed to comply with their statutory and common law duties (including MedQuest's Privacy Policy (*supra*)) to protect Plaintiff's and Class members' Personal and Medical Information, and to timely notify them in the event of a data breach.

140.    Defendants required their patients to provide Personal and Medical Information in order to receive medical services.

141.    Defendants affirmatively represented that they collected and stored the Personal and Medical Information of Plaintiff and the members of the Class in compliance with HIPAA and other statutory and common law duties, and using reasonable, industry standard means.[34]

---

[34] *See, e.g.,* MedQuest's privacy policy: https://medquest.com/hipaa-privacy-policy/.

33

142.     Based on the implicit understanding and also on Defendants' representations (as described above), Plaintiff and the Class accepted Defendants' offers and provided Defendants with their Personal and Medical Information.

143.     Plaintiff and Class members would not have provided their Personal and Medical Information to Defendants had they known that Defendants would not safeguard their Personal and Medical Information as promised or provide timely notice of a data breach.

144.     Plaintiff and Class members fully performed their obligations under the implied contracts with Defendants.

145.     Defendants breached the implied contracts by failing to safeguard Plaintiff's and Class members' Personal and Medical Information and failing to provide them with timely and accurate notice of the Data Breach.

146.     The losses and damages Plaintiff and Class members sustained (as described above) were the direct and proximate result of Defendants' breach of the implied contract with Plaintiff and Class members.

**FOURTH CAUSE OF ACTION**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On Behalf of Plaintiff and the Class or, alternatively, Plaintiff and the Maryland Subclass)**

147.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

148.     As described above, Defendants made promises and representations to Plaintiff and the Class that they would comply with HIPAA and other applicable laws and industry best practices.

149.     These promises and representations became a part of the contract between Defendants and Plaintiff and the Class.

150.     While Defendants had discretion in the specifics of how they met the applicable laws and industry standards, this discretion was governed by an implied covenant of good faith and fair dealing.

151.     Defendants breached this implied covenant when they engaged in acts and/or omissions that are declared unfair trade practices by the FTC and state statutes and regulations, and when they engaged in unlawful practices under HIPAA. These acts and omissions included: representing that they would maintain adequate data privacy and security practices and procedures to safeguard the Personal and Medical Information from unauthorized disclosures, releases, data breaches, and theft; omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the Class's Personal and Medical Information; and failing to disclose to the Class at the time they provided their Personal and Medical Information to them that Defendants' data security systems and protocols, including training, auditing, and testing of employees, failed to meet applicable legal and industry standards.

152.     Plaintiff and Class members did all or substantially all of the significant things that the contract required them to do.

153.     Likewise, all conditions required for Defendants' performance were met.

154.     Defendants' acts and omissions unfairly interfered with Plaintiff's and Class Members' rights to receive the full benefit of their contracts.

155.     Plaintiff and Class Members have been harmed by Defendants' breach of this implied covenant in the many ways described above, including overpayment for services, the purchase of identity theft monitoring services not provided by Defendants, imminent risk of certainly impending and devastating identity theft that exists now that cyber criminals have

their Personal and Medical Information, and the attendant long-term expenses of attempting to mitigate and insure against these risks.

156.    Defendants are liable for this breach of these implied covenants, whether or not they are found to have breached any specific express contractual term.

157.    Plaintiff and Class members are entitled to damages, including compensatory damages and restitution, declaratory and injunctive relief, and attorney fees, costs, and expenses.

**FIFTH CAUSE OF ACTION**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(On Behalf of Plaintiff and the Class or, alternatively, Plaintiff and the Maryland Subclass)**

158.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

159.    This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

160.    As previously alleged, Plaintiff and members of the Class are entered into contracts with Defendants, which contracts required Defendants to provide adequate security for the Personal and Medical Information they collected from Plaintiff and the Class.

161.    Defendants owe a duty of care to Plaintiff and Class members that require them to adequately secure Plaintiff's and Class members' Personal and Medical Information.

162.    Defendants still possess the Personal and Medical Information of Plaintiff and the Class members.

163.    Defendants have not satisfied their contractual obligations and legal duties to Plaintiff and the Class members.

4894-5345-1823.v1

164.    Since the Data Breach, Defendants have not yet announced any changes to their data security infrastructure, processes or procedures to fix the vulnerabilities in their computer systems and/or security practices which permitted the Data Breach to occur and go undetected for months and, thereby, prevent further attacks.

165.    Defendants have not satisfied their contractual obligations and legal duties to Plaintiff and the Class. In fact, now that Defendants' insufficient data security is known to hackers, the Personal and Medical Information in Defendants' possession is even more vulnerable to cyberattack.

166.    Actual harm has arisen in the wake of the Data Breach regarding Defendants' contractual obligations and duties of care to provide security measures to Plaintiff and the members of the Class. Further, Plaintiff and the members of the Class are at risk of additional or further harm due to the exposure of their Personal and Medical Information and Defendants' failure to address the security failings that lead to such exposure.

167.    There is no reason to believe that Defendants' security measures are any more adequate now than they were before the breach to meet Defendants' contractual obligations and legal duties.

168.    Plaintiff and the Class, therefore, seek a declaration (1) that Defendants' existing security measures do not comply with their contractual obligations and duties of care to provide adequate security, and (2) that to comply with their contractual obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to:

    a.    Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including

simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

b.  Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

c.  Ordering that Defendants audit, test, and train their security personnel regarding any new or modified procedures;

d.  Ordering that Defendants segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised, hackers cannot gain access to other portions of Defendants' systems;

e.  Ordering that Defendants cease transmitting Personal and Medical Information via unencrypted email;

f.  Ordering that Defendants cease storing Personal and Medical Information in email accounts;

g.  Ordering that Defendants purge, delete, and destroy, in a reasonably secure manner, customer data not necessary for their provisions of services;

h.  Ordering that Defendants conduct regular database scanning and security checks; and

i.  Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

SIXTH CAUSE OF ACTION
VIOLATIONS OF MARYLAND'S CONSUMER PROTECTION ACT
MD. CODE ANN., COM. LAW §§ 13-301, ET SEQ.
(On Behalf of Plaintiff and the Maryland Subclass)

170.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

171.    Defendants are each "a person" as defined by Md. Code, Com Law § 13-101(h).

172.    Defendants' conduct as alleged herein related to "sales," "offers of sale," or "bailment" as defined by Md. Code, Com. Law § 13-101(i) and § 13-303.

173.    The Maryland Subclass Members are "consumers" as defined by Md. Code, Com. Law § 13-101(c).

174.    Defendants advertise, offer, or sells "consumer goods" or "consumer services" as defined by Md. Code, Com. Law § 13-101(d).

175.    Defendants advertised, offered, or sold goods or services in Maryland and engaged in trade or commerce directly or indirectly affecting the people of Maryland.

176.    Defendants engaged in unfair and deceptive trade practices, in violation of Md. Code, Com. Law § 13-301, including:

a.    False or misleading oral or written representations that have the capacity, tendency, or effect of deceiving or misleading consumers, including in MedQuest's privacy policy (*supra*);

b.    False or misleading oral or written representations that have the capacity, tendency, or effect of deceiving or misleading consumers, including in MedQuest's privacy policy (*supra*);

c.    Representing that consumer goods or services have a characteristic that they do not have, by and through making the representations included

in MedQuest's privacy policy (*supra*);

d.    Representing that consumer goods or services are of a particular standard, quality, or grade that they are not, by and through making the representations included in MedQuest's privacy policy (*supra*);

e.    Failing to state a material fact where the failure deceives or tends to deceive; by and through making the representations included in MedQuest's privacy policy (*supra*) when Defendants were aware that their privacy policies were insufficient to protect Plaintiff and Maryland Subclass Members' privacy;

f.    Advertising or offering consumer goods or services without intent to sell, lease, or rent them as advertised or offered by and through making the representations included in MedQuest's privacy policy (*supra*); and

g.    Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer relies on the same in connection with the promotion or sale of consumer goods or services or the subsequent performance with respect to an agreement, sale lease or rental by and through making the representations included in MedQuest's privacy policy (*supra*).

177.    Defendants engaged in these unfair and deceptive trade practices in connection with offering for sale or selling consumer goods or services in violation of Md. Code, Com Law § 13- 303, including:

a.    Failing to implement and maintain reasonable security and privacy

measures to protect Plaintiff and Maryland Subclass Members' Personal Information, which was a direct and proximate cause of the Data Breach;

b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Maryland Subclass Members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, and HITECH, which was a direct and proximate cause of the Data Breach;

d.    Misrepresenting that they would protect the privacy and confidentiality of Plaintiff and Maryland Subclass Members' Personal Information, including by implementing and maintaining reasonable security measures;

e.    Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Maryland Subclass Members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, and HITECH, and the Maryland Personal Information Protection Act, Md. Code, Com. Law § 14-3503;

f.    Omitting, suppressing, and concealing the material fact that they did not

4894-5345-1823.v1

reasonably or adequately secure Plaintiff and Maryland Subclass Members' Personal Information; and

g.    Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and the Maryland Subclass Members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, HITECH, and the Maryland Personal Information Protection Act, Md. Code, Com. Law § 14-3503.

178.    Defendants' unfair and deceptive trade practices included violating the Maryland Personal Information Protection Act, Md. Code Com. Law § 14-3501, *et. seq.*

179.    Under Md. Comm. Code § 14-3503(a), "[t]o protect Personal Information from unauthorized access, use, modification, or disclosure, a business that owns or licenses Personal Information of an individual residing in the State shall implement and maintain reasonable security procedures and practices that are appropriate to the nature of Personal Information owned or licensed and the nature and size of the business and its operations."

180.    Defendants are businesses that own or license computerized data that includes Personal Information as defined by Md. Comm. Code §§ 14-3501(b)(1) and (2); with Plaintiff and Class Members being "individuals" and "customers" as defined and covered by Md. Comm. Code §§ 14-3502(a) and 14-3503; and with Plaintiff and Class Members' Personal Information including Personal Information as covered under Md. Comm. Code § 14-3501(d).

181.    Defendant MedQuest did not maintain reasonable security procedures and practices appropriate to the nature of the Personal Information owned or licensed and the nature and size of its business and operations in violation of Md. Comm. Code § 14-3503.

182.    The Data Breach was a "breach of the security of a system," as defined by Md. Comm. Code § 14-3504(1).

183.    Under Md. Comm. Code § 14-3504(b)(1), "[a] business that owns or licenses computerized data that includes Personal Information of an individual residing in the State, when it discovers or is notified of a breach of the security system, shall conduct in good faith a reasonable and prompt investigation to determine the likelihood that Personal Information of the individual has been or will be misused as a result of the breach."

184.    Under Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2), "[i]f, after the investigation is concluded, the business determines that misuse of the individual's Personal Information has occurred or is reasonably likely to occur as a result of a breach of the security system, the business shall notify the individual of the breach" and that notification "shall be given as soon as reasonably practical after the business discovers or is notified of the breach of a security system."

185.    Because Defendant MedQuest discovered a security breach and had notice of a security breach, Defendants had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2).

186.    By failing to disclose the Data Breach in a timely and accurate manner, Defendants violated Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2).

187.    As a direct and proximate result of Defendants' violations of Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2), Plaintiff and Class Members suffered damages, as described above.

188.    Pursuant to Md. Comm. Code § 14-3508, Defendants' violations of Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2) are unfair or deceptive trade practices.

189.    Defendants intended to mislead Plaintiff and Maryland Subclass Members and induce them to rely on its misrepresentations and omissions.

190.    Had Defendants disclosed to Plaintiff and Maryland Subclass Members that their data systems were not secure and, thus, vulnerable to attack, Defendants would have been unable to continue in business and they would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendants received, maintained, and compiled Plaintiff's and Maryland Subclass Members' Personal Information as part of the services Defendants provided and for which Plaintiff and Maryland Subclass Members paid without advising Plaintiff and Maryland Subclass Members that Defendants' data security practices were insufficient to maintain the safety and confidentiality of Plaintiff's and Class Members' Personal Information. Accordingly, Plaintiff and the Maryland Subclass Members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

191.    Defendants had a duty to disclose the above-described facts due to the circumstances of this case and the sensitivity and extensivity of the Personal Information in their possession. Such a duty is also implied by law due to the nature of the relationship between consumers—including Plaintiff and the Maryland Subclass—and Defendants, because consumers are unable to fully protect their interests with regard to the Personal Information in Defendants' possession, and place trust and confidence in Defendants. Defendants' duty to disclose also arose from their:

a.    Possession of exclusive knowledge regarding the security of the data in its systems;

b.    Active concealment of the state of its security; and/or

44

c.    Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiff and the Maryland Subclass that contradicted these representations.

192.    Defendants acted intentionally, knowingly, and maliciously to violate Maryland's Consumer Protection Act, and recklessly disregarded Plaintiff and Maryland Subclass Members' rights. Past data breaches within the healthcare industry put Defendants on notice that their security and privacy protections were inadequate.

193.    As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and Maryland Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with Defendants as they would not have paid Defendants for goods and services or would have paid less for such goods and services but for Defendants' violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; time and money spent cancelling and replacing passports; loss of value of their Personal Information; and an increased, imminent risk of fraud and identity theft.

194.    Plaintiff and Maryland Subclass Members seek all monetary and non-monetary relief allowed by law, including damages, restitution, disgorgement, injunctive relief, and attorneys' fees and costs.

4894-5345-1823.v1

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment against Defendants as follows:

a. An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b. A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual damages, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. An order requiring Defendants to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

e. A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

f. An award of such other and further relief as this Court may deem just and proper.

4894-5345-1823.v1

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff hereby demands a trial by jury on all appropriate issues raised in this Class Action Complaint.

Dated: August 24, 2022                         Respectfully submitted,

Charles H. Thronson, USB #3260
PARSONS BEHLE & LATIMER
201 S. Main Street, Suite 1800
Salt Lake City, Utah  84111
(801) 532-1234
(801) 536-6111 (facsimile)
cthronson@parsonsbehle.com

*William B. Federman, OBA #2853
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com

*Counsel for Plaintiff and the Putative Class*
*Pro Hac Vice Application Forthcoming*

47